UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES B. HURLEY and BRANDI HURLEY,

        Plaintiffs,

and

JAMES HURLEY,

        Counter Defendant

v.

DEUTSCHE BANK TRUST COMPANY
AMERICAS f/k/a Baner's Trust Company,
as Trustee and Custodian by: SAXON
MORTGAGE SERVICES, INC.,

        Defendants/Counter Plaintiffs,

and

DAVID C. LOHR and ORLANS
ASSOCIATES, P.C.,

        Defendants.

_____/

Case No. 07-11924

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT [36]**

Plaintiffs James B. Hurley and Brandi Hurley filed this action against Defendants Deutsche Bank Trust Company Americas f/k/a Banker's Trust Company, as Trustee and Custodian by: Saxon Mortgage Services Inc., f/k/a Meritech Mortgage Services, Inc. ("Deutsche Bank"); David C. Lohr; and Orlans Associates, P.C. ("Orlans"). Plaintiffs assert five causes of action: violation of the Servicemembers Civil Relief Act, 50 App. U.S.C. §

501, *et seq.* (Count I); Negligent Infliction of Emotional Distress (Count II); Intentional Infliction of Emotional Distress (Count III); Fraud (Count IV); and Conversion (Count V). Defendants argue that Plaintiffs have failed to state a claim upon which relief can be granted for Counts I (with respect to Plaintiff Brandi Hurley only), II, and IV. Defendants seek summary judgment as to Counts III and V. This matter comes before the Court on Defendants' motion to dismiss and for partial summary judgment.[1] For the reasons set forth below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

**I.   Facts**

Plaintiffs James B. Hurley and Brandi Hurley are married. James B. Hurley has been a member of the Michigan National Guard of the United States Army since September 7, 1984, and is currently a sergeant. (Pl.'s Resp. at 1.) On September 26, 1994, he purchased a residence at 53107 - 59 1/2 Street, Hartford, Michigan, 49057 ("the Property"). (*Id.*; Def.'s Mot. at 1.) On September 30, 2003, Sergeant Hurley executed a mortgage in the amount of $95,200 and used the Property as security. (*Id.*)

In orders dated July 2, 2004, Sergeant Hurley was "ordered to active duty for training (ADT) for [July 21, 2004 through August 20, 2004] plus allowable travel time." (Pl.'s Resp., Ex. 7.) The orders required Sergeant Hurley to report to Camp Roberts in California, where he was trained as a mechanic on power generators. (Pl.'s Resp. at 1.) At the end of training, Sergeant Hurley achieved the course standards in the power generator equipment repair service school. (Pl.'s Mot., Ex. 10.)

---

[1]This motion was filed by Defendants David C. Lohr and Orlans. Deutsche Bank filed a concurrence with this motion and seeks identical relief to that requested in the motion. (Docket Text # 41.)

Sergeant Hurley returned to Michigan in September 2004. (Pl.'s Resp. at 3.) In orders dated September 9, 2004, Sergeant Hurley's National Guard unit was "mobilized in support of Operation Iraqi Freedom." (Pl.'s Resp., Ex. 11.) Sergeant Hurley was ordered to active duty, effective October 1, 2004, for an initial period of up to 18 months. (*Id.*) On October 12, 2004, Sergeant Hurley was "ordered to active duty as a member of [his] Reserve Component Unit." (Pl.'s Resp., Ex. 13.) Sergeant Hurley was ordered to report to his "home station" on October 25, 2004, and he was mobilized out of Fort Dix, New Jersey, on October 28, 2004, for a period of active duty not to exceed 730 days. (*Id.*) The purpose of his deployment was "Support of Operation Iraqi Freedom." (*Id.*)

While Sergeant Hurley was training in California, he fell behind in his mortgage payments. (Def.'s Mot. at 1; Pl.'s Resp. at 2.) According to Plaintiffs, Sergeant Hurley's impending deployment to Iraq "required all of his family's monthly income." (Pl.'s Resp. at 2.) Sergeant Hurley's income was spent on items such as socks, underwear, personal hygiene products, and tools that he would use in Iraq. (*Id.*)

During this time, Defendant Deutsche Bank retained Defendant Orlans to initiate foreclosure proceedings. (Def.'s Mot. at 1.) On October 14, 2004, the Property was foreclosed by advertisement and sold at a sheriff's sale. (*Id.*; Pl.'s Resp. at 3.) Deutsche Bank purchased the property, and the sheriff's deed was to become operative after six months. (Compl. at ¶ 15, 16.)

In order for the foreclosure sale to occur, Defendant Lohr signed an affidavit that stated:

> The undersigned, being first duly sworn, states that upon investigation he is informed and believes that none of the persons named in the notice attached to the sheriff's deed of mortgage foreclosure, nor any person upon whom

3

> they or any of them were dependent, were in the military service of the United States at the time of sale or for six months prior thereto; nor the present grantee(s).
>
> The undersigned further states that this affidavit is made for the purpose of preserving a record and clearing title by virtue of the Soldiers' and Sailors' Relief Act of 1940 [now the Servicemembers Civil Relief Act], as amended.

(Pl.'s Mot., Ex. 15.)

On May 3, 2005, Defendants initiated an eviction of "James B. Hurley and all other occupants." (Pl.'s Mot., Ex. 16.)  On the proof of service for the eviction action, dated May 6, 2005, the process server wrote that "according to spouse, Hurley is in the military in Iraq."  (Pl.'s Mot., Ex. 18.)  The summons required Sergeant Hurley to appear at the Michigan District Court in South Haven, Michigan, on May 13, 2005 at 9:00 a.m.  (Pl.'s Mot., Ex. 19.)  At this time, Sergeant Hurley was serving in Iraq. (Pl.'s Mot., Ex. 17.)  The hearing was adjourned for one month.  (Pl.'s Mot. at 4.)

Sergeant Hurley's mother, Valla Hurley, who was living at the Property with Brandi Hurley and her two children, went to the district court to attend the subsequent hearing. (Pl.'s Resp., Ex. 9 at ¶ 2(b).)  Ms. Hurley alleges that before the hearing, Defendants' counsel took her to a conference room and told her that she had to vacate the Property. She also claims that Defendants' counsel told her that the matter would be adjourned, that she could come back and discuss the matter with the judge in 30 days, and that she would be paid $1000 if she agreed to leave voluntarily.  (*Id.* at ¶ 2(e, f).)  Defendants' counsel also allegedly told Ms. Valla that he would relay this information to the judge.  (*Id.* at ¶ 2(j).)  Ms. Hurley left the court without appearing before the judge. (*Id.* at ¶ 2(i).)

Judge Clark, who was presiding over the eviction proceedings, states:

4

> That at no time during the eviction proceedings do I recall being informed that an individual was present in the courthouse on behalf of James Hurley and claiming to be an occupant of the house at any time during the eviction proceedings . . . .
>
> As a result that neither Sgt. Hurley nor any other occupants of the house came forward to express their questions and/or concerns, I signed a Default Judgment, which contained the provision that "for a defendant on active military duty, default judgment shall not be entered except as provided by Servicemembers Civil Relief Act."

(Pl.'s Resp., Ex. 20 at ¶ 5, 6.)

Plaintiff Brandi Hurley alleges that Defendants' agent offered her $2500 to remove herself, her children, and their belongings from the premises. (Pl.'s Resp., Ex. 8 at ¶ 3.) She also states that "out of fear of having someone come and forcibly remove me [and] my children . . . I made arrangements with family members to help pack our items and leave the property." (*Id.* at ¶ 5.)

On June 14, 2005, Deutsche Bank was granted a Judgment of Possession to the property. (Def.'s Mot., Ex. 3.) A Writ of Restitution was issued on July 13, 2005, which required a court officer to "remove the above named defendant(s) and other occupants from the premises described and to restore peaceful possession to the plaintiff." (Pl.'s Resp., Ex. 22.) The next day, a court officer attempted to serve the Writ at the Property, but noted that "the house was found to be totally vacant." (*Id.*) On October 23, 2005, Defendants sold the Property to a bonafide purchaser. (Pl.'s Mot., Ex. 23.) Sergeant Hurley returned home from Iraq on December 22, 2005, and found someone living in and claiming ownership to the Property. (Compl. at ¶ 27.) Plaintiffs filed this lawsuit on May 2, 2007.

This matter is now before the Court on Defendants' motion to dismiss and for partial summary judgment.

## II. Analysis

Defendants seek dismissal of some of Plaintiffs' claims and summary judgment as to others. The Court will address the motion to dismiss first.

### A. Motion to Dismiss

Defendants ask this Court to dismiss Plaintiffs' claims of Defendants' violation of the Servicemembers Civil Relief Act (with respect to Plaintiff Brandi Hurley only), negligent infliction of emotional distress, and fraud. The Court will consider each claim in turn.

#### 1. Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a Complaint. In a light most favorable to Plaintiff, the court must assume that Plaintiff's factual allegations are true and determine whether the Complaint states a valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97 F.3d 137, 139 (6th Cir. 1996).

This standard of review "'requires more than the bare assertion of legal conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The Complaint must include direct or indirect allegations "respecting all the material elements to sustain a recovery under *some* viable legal theory." *See In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted).

### 2. Servicemembers Civil Relief Act

Defendants argue that Plaintiffs' claim under the Servicemembers Civil Relief Act ("SCRA") should be dismissed with respect to Plaintiff Brandi Hurley because the complaint "fails to include a claim for damages under the SCRA as it relates to co-Plaintiff Brandi Hurley." (Def.'s Mot. at 3.) Plaintiffs correctly point out that the SCRA provides that "a dependent of a servicemember is entitled to the protections of this title if the dependent's ability to comply with a lease, contract, bailment, or other obligation is materially affected by reason of the servicemember's military service." 50 App. U.S.C. § 538. The term "dependent" includes a servicemember's spouse. *Id.* at § 511(4).

Plaintiffs have failed to allege facts to illustrate that Mrs. Hurley is entitled to this provision's protections. Moreover, Plaintiffs do not set forth a claim for damages under the SCRA with respect to Mrs. Hurley. The only mention of damages to Mrs. Hurley states that Defendants "fraudulently induced her to leave the premises, promising her the payment of $2,500.00." (Compl. at ¶ 23.) These alleged damages, however, are specific to Plaintiffs' claim of Fraud in Count IV of the complaint and do not provide a basis of recovery under the SCRA. The only damages alleged under the SCRA relate solely to Sergeant Hurley. (*See* Compl. at ¶ 28.)

At oral argument, Plaintiffs' counsel requested leave to amend Count I so as to add damages claims for Mrs. Hurley. Because Plaintiffs can cure the deficiency in Count I as it relates to Mrs. Hurley by amending the complaint, Plainitffs' request for leave to amend is GRANTED. Defendants' motion to dismiss Count I as it relates to Mrs. Hurley is DENIED.

### 3. Negligent Infliction of Emotional Distress

7

Defendants' also seek a dismissal of Plaintiffs' claim for negligent infliction of emotional distress. This tort is limited to "the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." *Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 720 (Mich. App.1993). Plaintiffs have not alleged that they witnessed any injury to a third party. As a result, Defendants' motion to dismiss this claim is GRANTED.

Plaintiffs argue that Count II was incorrectly labeled and ask for leave to amend the complaint to re-label the claim as one for simple negligence. Count II, however, only addresses Sergeant Hurley's alleged injuries and does not contain elements to establish any claim, including negligence. Accordingly, changing the heading of Count II would not cure its deficiencies. Plaintiffs' request to amend Count II is therefore DENIED.

### 4. Fraud

Plaintiffs also assert claims of fraud, which Defendants ask this Court to dismiss. To establish these claims, Plaintiffs must show:

> 1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*See, e.g., Hi-Way Motor Co. v. Int'l Harvester* Co., 24 N.W.2d 813, 816 (Mich. 1976); *Little Caesar Enterprises, Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

Plaintiffs' first fraud claim relates to the affidavit signed by Defendant Lohr, which states that "upon investigation he is informed and believes that none of the persons named in the notice . . . were in the military service of the United States at the time of sale or for

8

six months prior thereto." Defendants argue that Plaintiffs have not met the fourth or fifth elements of a prima facie case. The Court agrees.

Defendant Lohr signed the affidavit "in order for the [foreclosure] sale to occur." (Pl.'s Resp. at 3.) The affidavit was "made for the purpose of preserving a record and clearing title" to the property. (Pl.'s Resp., Ex. 15.) Thus, while Defendant Lohr may have intended for *someone* to rely on the affidavit, Plaintiffs have made no showing that he intended for *them* to rely on the affidavit. Furthermore, Plaintiffs have not established that they acted in reliance on the affidavit. Accordingly, Plaintiffs have not established a claim of fraud based on Defendant Lohr's affidavit, and Defendants' motion to dismiss as to this claim is GRANTED.

Plaintiffs' second claim of fraud involves Defendants' alleged promise to pay Mrs. Hurley $2500 if she voluntarily would vacate the property. The Michigan Supreme Court has recognized, however, that "an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Hi-Way Motor*, 247 N.W.2d at 816. Plaintiffs' fraud allegation rests on Defendants' alleged promises to pay Mrs. Hurley if she would leave the property; such a future promise does "not constitute fraud." Accordingly, Defendants' motion to dismiss with respect to this claim is GRANTED.

### B. Summary Judgment

Defendants seek summary judgment as to Plaintiffs' claims for intentional infliction of emotional distress and conversion.

### 1. Summary Judgment Standard

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

### 2. Intentional Infliction of Emotional Distress

In order to establish a claim for intentional infliction of emotional distress ("IIED"), Plaintiffs must show: 1) extreme and outrageous conduct; 2) intent or recklessness; 3) causation; and 4) severe emotional distress. *Pratt v. Brown Mach. Co.*, 855 F.2d 1225,

1239 (6th Cir. 1988).  Defendants challenge Plaintiffs' ability to make the required showing for the first and fourth elements.  The Court will address the fourth element first as it disposes of Plaintiffs' claim.

> Emotional distress:
>
> includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. *It is only where it is extreme that the liability arises.* Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. *The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.*

*Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 911 (Mich.1985) (emphasis original). The *Roberts* court disposed of the plaintiff's IIED claim because "there was no evidence of grief, depression, disruption of life style, or of treatment for anxiety or depression." *Id.* at 912.

In the portion of their brief addressed to the IIED claim, Plaintiffs make no mention of any alleged emotional distress.  Sergeant Hurley did swear in an affidavit that he "felt totally lost and helpless in what was going on against [himself] and [his] family."  (Pl.'s Resp., Ex. 3 at ¶ 15.)  Additionally, in response to Defendants' first request for discovery, Sergeant Hurley reports feeling angry, upset, and sad.  (Def.'s Mot., Ex. 10 at ¶ 21.)  Sergeant Hurley has "treated" these symptoms by bringing this lawsuit, and he has not sought other treatment.  (*Id.*)  Mrs. Hurley also reports feeling sad and angry.  (*Id.* at ¶ 23.)

While these feelings undoubtedly are consistent with those which normally would accompany a home foreclosure, they do not rise to the level where "no reasonable man could be expected to endure it."  Because Plaintiffs have not established severe emotional distress, Defendants' motion as to this claim is GRANTED.

### 3. Conversion

Plaintiffs' final claim is for conversion, and they rely on three statutory provisions to support their claim, Mich. Comp. Laws § § 600.2918, 600.2919, and 600.2919(a).  The Court will consider each provision in turn.

§ 600.2919 is not applicable to this case as it pertains to waste and damage of land; Plaintiffs have made no allegations to this effect.

Plaintiffs' claim under § 600.2918 also must fail as it is time barred.  That section provides that "an action for damages under this section shall be commenced within 1 year from the time the cause of action arises or becomes known to the plaintiff."  Plaintiffs argue that Sergeant Hurley did not know that his home had been sold to a bonafide purchaser until "sometime in June 2006." (Pl.'s Resp. at 15.)  Sergeant Hurley's affidavit, however, states that while still in Iraq he learned that Mrs. Hurley and her children were forced to move from the Property.  (Pl.'s Resp., Ex. 3 at ¶ 13.)  Moreover, Plaintiffs' complaint states that "[o]n December 22, 2005 Sgt. Hurley returned home from the war in Iraq to find someone else living in and claiming ownership to his home."  (Compl. at ¶ 27.)  Accordingly, at the very latest, Sergeant Hurley knew of this potential cause of action on December 22, 2005.  This suit was not filed until May 3, 2007, over 16 months later.  (Docket Text #1.)  Plaintiffs thus cannot maintain a cause of action under § 600.2918.[2]

---

[2] Plaintiffs argue that this claim is saved by § 531(c)(2) of the SCRA, which provides: "The remedies and rights provided under this section are in addition to and do not preclude any remedy for wrongful conversion (or wrongful eviction) *otherwise available under the law* to the person claiming relief under this section, including any award for consequential and punitive damages."  (Emphasis added).  Because this claim is time barred by the terms of the Michigan statute itself, relief under the statute is not "otherwise available under the law."  Thus, Plaintiffs' argument is to no avail.

Plaintiffs' final conversion claim rests on Mich. Comp. Laws § 600.2919a. This provision does not contain a 1 year time limit, and Plaintiffs' claim under this section is not time barred. Defendants argue, however, that the section is inapplicable as it only protects property that has been stolen or embezzled. Contrary to Defendants' position, the statute addresses "[a]nother person's stealing or embezzling property *or converting* property to the other person's own use." (Emphasis added). Plaintiffs' claim therefore does not fail on this basis, either.

Defendants also argue that conversion only applies to personal property and that Defendants' claim is based solely on real property. Defendants are correct that the tort of conversion is "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Head v. Phillips Camper Sales & Rental, Inc.*, 593 N.W.2d 595, 603 (Mich. App. 1999). And while Michigan courts distinguish between the tort of conversion and statutory conversion, *see id.*, Plaintiffs concede that § 600.2919(a) relates to personal property.[3] (Pl.'s Resp. at 15.)

Plaintiffs argue that they have set forth a claim regarding conversion of their personal property. They note that in addition to their financial loss of equity in the Property, they also lost numerous items of personal property, including out buildings, hunting blinds, floating docks, fishing stands, and a new double-wide.[4] (Pl.'s Resp., Ex. 3 at ¶ 9.)

---

[3] The other two provisions relied upon by Plaintiffs both specifically reference "lands." *See* Mich. Comp. Laws § § 600.2918 and 600.2919. In contrast, § 600.2919a references only "property." The Court therefore agrees with Plaintiffs' position that § 600.2919a relates only to personal property.

[4] Defendants correctly point out that Plaintiffs' complaint does not reference personal property. Nonetheless, because Defendants seek summary judgment on this claim, the Court must consider affidavits submitted with the pleadings. *See* Fed. R. Civ. P. 56(c).

Personal property can become part of the real property if it is a fixture. *See, e.g., Ottaco v. Gauze*, 574 N.W.2d 393, 396 (Mich. App. 1998) (holding that a mobile home was part of the real property because it was a fixture). "Property is considered to be a fixture if (1) it is annexed to the realty, (2) its adaptation or application to the realty being used is appropriate, and (3) there is an intention to make the property a permanent accession to the realty." (*Id.*) The Court's focus is on the intent of the annexor as manifested by objective, visible facts. (*Id.*) Here, there is no real question that Plaintiffs' personal property meets the first two elements of a fixture. The focus, then, is whether Plaintiffs intended to make the property a permanent accession.

When the *Ottaco* court addressed whether a mobile home was a permanent accession, it focused on the fact that the mobile home sat on a concrete slab foundation, had a porch, and was connected to utility lines. Because the mobile home had "all the attributes of a conventional, permanent dwelling," the court concluded that it was a fixture even though "the home could be eventually moved from its foundation to another location." (*Id.*)

In this case, Plaintiffs' counsel established at oral argument that the personal property referenced by Plaintiffs was easily removable and was not permanent in any way. In fact, the bonafide purchase who took possession of the Property quickly removed Plaintiffs' personal property, including the double-wide, from the land. Because the personal property was not intended to be permanent, it was not a fixture and cannot be considered part of the real estate. The Court concludes that the property at issue was in fact personal property,

---

Sergeant Hurley's affidavit sets forth personal property that allegedly was converted.

and § 600.2919(a) therefore applies to Plaintiffs' claim. Accordingly, Defendants' motion for summary judgment as to this claim is DENIED.

### III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is DENIED as to Mrs. Hurley's SCRA claim, and Plaintiffs' request for leave to amend Count I as it relates to Mrs. Hurley's damages is GRANTED. Defendants' motion to dismiss is GRANTED as to Plaintiffs' claim for negligent infliction of emotional distress, and Plaintiffs' request for leave to amend this count is DENIED. Defendants' motion to dismiss is GRANTED as to Plaintiffs' claim for fraud. Defendants' motion for summary judgment is GRANTED as to the IIED claim, GRANTED as to Plaintiffs' conversion claims under Mich. Comp. Laws §§ 600.2918 and 600.2919, and DENIED as to Plaintiffs' conversion claim under Mich. Comp. Laws § 600.2919a.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: February 12, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 12, 2008, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager