UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES B. HURLEY and BRANDI HURLEY,

      Plaintiffs,

and

JAMES B. HURLEY,

      Counter-Defendant,

                                             HON. GORDON J. QUIST

v.

                                             Case No. 1:08-CV-361

DEUTSCHE BANK TRUST COMPANY
AMERICAS f/k/a Banker's Trust Company,
as Trustee and Custodian by: SAXON
MORTGAGE SERVICES, INC., f/k/a/
Meritech Mortgage Services, Inc.,

      Defendants/Counter-Plaintiffs,

and

DAVID C. LOHR and ORLANS
ASSOCIATES, P.C.,

      Defendants.
_____/

## OPINION

### I.  Procedural History

On May 2, 2007, Plaintiffs, James B. Hurley and Brandi Hurley, filed suit in the United

States District Court for the Eastern District of Michigan against Defendants, Deutsche Bank Trust

Company Americas f/k/a Banker's Trust Company, as Trustee and Custodian by: Saxon Mortgage

Services, Inc. (collectively, "Deutsche Bank"), and David C. Lohr and Orlans Associates, P.C.

(collectively, "Orlans").  Plaintiffs' five-count complaint alleged violations of the Servicemembers Civil Relief Act, 50 U.S.C. App. § 501, *et seq.* ("SCRA"), negligent infliction of emotional distress, intentional infliction of emotional distress, fraud, and conversion under M.C.L. §§ 600.2918, 600.2919, and 600.2919a.  Deutsche Bank filed a counterclaim against Plaintiffs on October 16, 2007, seeking a deficiency of $51,642.01 arising from a foreclosure sale that is the foundation of Plaintiffs' lawsuit.  Plaintiffs filed an amended complaint on October 22, 2007, which incorporated a jury demand.

On February 12, 2008, the Eastern District dismissed Plaintiffs' negligent infliction of emotional distress and fraud claims and granted summary judgment on Plaintiffs' intentional infliction of emotional distress claim and §§ 600.2918 and 600.2919 conversion claims.  Plaintiffs filed a two-count second amended complaint on March 3, 2008, alleging SCRA (Count I) and § 600.1919a conversion (Count II) claims.  On April 17, 2008, the Eastern District transferred the case to this Court.

The Court now has before it: (1) Deutsche Bank's *Daubert* Motion to Exclude Any Testimony of John S. Odom, Jr.; (2) Plaintiffs' Motion for Summary Judgment Pursuant to Rule 56 and Judgment on the Pleadings Pursuant to Rule 12(c); (3) Orlans' Motion for Summary Judgment; (4) Deutsche Bank's Motion for Summary Judgment; and (5) Orlans' Motion for Rule 11 Sanctions. For the reasons set forth below, (1) will be granted, (2) will be denied, (3) will be granted in part, (4) will be granted in part, and (5) will be denied.

## II.  Facts

James B. Hurley joined the Michigan National Guard of the United States Army on September 7, 1984, and is currently ranked sergeant.  (Pls.' Summ. J. Reply Ex. 1 at 1.)  On September 30, 2003, Sgt. Hurley purchased real property located in Hartford, Michigan (the

"Property").  (*Id.*)  Over time, Sgt. Hurley improved the Property with several items including a "double-wide," commonly referred to as a trailer home.  (*Id.*)  On September 30, 2003, Sgt. Hurley signed a promissory note in favor of America's MoneyLine, Inc. (Deutsche Bank's predecessor-in-interest) for $95,200 and executed a mortgage on the Property as security for the note.  (Orlans' Summ. J. Resp. Ex. 2.)

Pursuant to Michigan Department of Military and Veterans Affairs orders dated July 2, 2004, Sgt. Hurley was "ordered to active duty for training" at Camp Roberts, California, for July 21, 2004, through August 20, 2004, plus allowable travel time.  (Deutsche Bank's Summ. J. Resp. Ex. 18.) Plaintiffs allege that their family underwent severe financial hardship during that period, due in part to expenditures related to Sgt. Hurley's military obligations.  (Pls.' Summ. J. Reply Ex. 1 at 3.)  Sgt. Hurley eventually ceased making monthly payments on his promissory note.  (Deutsche Bank's Summ. J. Resp. at 3.)  After Sgt. Hurley's default, Deutsche Bank enlisted Market Intelligence to valuate the Property.  (*Id.*)  Market Intelligence assessed the value of the Property at $70,000.  (*Id.*)

Sgt. Hurley returned to Michigan in September, 2004.  (Pls.' Summ. J. Reply Ex. 1 at 3.) In U.S. Army orders dated September 9, 2004, and received on September 11, 2004, Sgt. Hurley's National Guard Unit was "ordered to active duty" in support of Operation Iraqi Freedom for an initial period of 18 months beginning October 1, 2004.  (Pls.' Resp. to Orlans' Mot. for Summ. J. Ex. 1 at 3.)  In Michigan Department of Military and Veterans Affairs orders dated October 12, 2004, Sgt. Hurley was "ordered to active duty" in support of Operation Iraqi Freedom.  (Deutsche Bank's Summ. J. Resp. Ex. 19.)  Those orders required Sgt. Hurley to report to his home station on October 25, 2004, for mobilization out of Fort Dix, New Jersey on October 28, 2004, for a period of active duty not to exceed 730 days.  (*Id.*)

On October 14, 2004, following notice by publication, Deutsche Bank, through Orlans, held a sheriff's sale of the Property. (Orlans' Mot. for Summ. J. Ex. 2 at 1.) In order for the sale to occur, Defendant David C. Lohr signed a non-military affidavit stating:

> The undersigned, being first duly sworn, states that upon investigation he is informed and believes that none of the persons named in the notice attached to the sheriff's deed of mortgage foreclosure, nor any person upon whom they or any of them were dependent, were in the military service of the United States at the time of sale or for six months prior thereto; nor the present grantee(s).
>
> The undersigned further states that this affidavit is made for the purpose of preserving a record and clearing title by virtue of the Solders' and Sailors' Relief Act of 1940 [predecessor to the SCRA], as amended.

(*Id.* at 2.) Deutsche Bank placed the highest bid of $70,000 at the foreclosure sale and consequently obtained a sheriff's deed to the Property. (*Id.* at 1.) The payoff total on the promissory note at the time of the sale was $100,391.71 (Deutsche Bank's Summ. J. Resp. Ex. 3.)

On May 3, 2005, Defendants initiated eviction proceedings against Sgt. Hurley in the Van Buren County District Court in South Haven, Michigan. (Orlans' Mot. for Summ. J. Ex. 4.) The process server made a hand-written note on the May 6, 2005, proof of service for the eviction action that stated, "according to spouse, Hurley is in the military in Iraq." (Pls.' Summ. J. Reply Ex. 1 at 4.) The May 13, 2005, hearing was adjourned until June 6 because Sgt. Hurley's mother, Valla Hurley, who was living at the Property at that time, made an appearance to inform the court that Sgt. Hurley was in Iraq. (Deutsche Bank's Summ. J. Resp. at 7.) Sgt. Hurley had bestowed the power of attorney upon Valla Hurley. (*Id.* Ex. 4.) None of the Hurleys appeared for the subsequent hearing, and on June 14, 2005, the court entered a default judgment against Sgt. Hurley. (Pls.' Summ. J. Reply Ex. 1 at 4.) Plaintiffs allege, however, that Valla Hurley was actually present at the court on the date of the second hearing, hoping to inform the court that Sgt. Hurley was still in Iraq. (*Id.*) Defendants' counsel allegedly told Valla Hurley that she had to vacate the Property, that the

4

matter would be adjourned for 30 days, and that counsel would relay this information to the court. (*Id.*)  Sgt. Hurley's family left the Property under the belief that they would be compensated for doing so peacefully.  (*Id.*)  On November 16, 2005, Deutsche Bank sold the Property to a bona fide purchaser ("BFP") for $76,000.  (Deutsche Bank's Summ. J. Resp. Ex. 9.)  The instant action followed.

### III.  Discussion

#### A.  *Qualification of Plaintiffs' Expert*

Plaintiffs, in support of their SCRA claim, rely upon the affidavit of John S. Odom, Jr. Odom is a Louisiana attorney and former judge advocate for the U.S. Air Force who has written, lectured, and litigated on various aspects of the SCRA.  Orlans previously filed a Motion to Strike Plaintiffs' Expert, arguing that Plaintiffs failed to properly disclose Odom as an expert witness in contravention to Rules 26(a) and 37 of the Federal Rules of Civil Procedure.  The magistrate judge found that Plaintiffs did not violate the expert witness disclosure rules and accordingly denied Orlans' motion.  During the hearing on that motion, however, the magistrate judge voiced her concerns with the substantive admissibility of Odom's affidavit and anticipated that a *Daubert* motion would be forthcoming.  Deutsche Bank's *Daubert* motion is now before the Court

> Federal Rule of Evidence 702, governing the admissibility of expert testimony, provides that:
>
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

For both scientific and non-scientific expert testimony, the district court's job is the same: ensure that the evidence "is not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S.

579, 589, 113 S. Ct. 2786, 2795 (1993). In *Daubert*, the Supreme Court identified several factors to guide courts in determining whether expert testimony is reliable. Those factors are: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a known or potential rate of error and the existence of standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance in a relevant scientific community. *Id.* However, these factors are not exhaustive nor are they relevant for every form of expert testimony. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251(6th Cir. 2001).

Deutsche Bank primarily argues that Odom is unqualified as an expert on the provisions of the SCRA or interpretation of military orders in connection with the SCRA, as his affidavit fails to identify any special education, training, experience, or uniqueness in his knowledge in these areas. Deutsche Bank states succinctly, "A general legal practice as a plaintiff's attorney and reserve status for twenty plus years in the Air Force JAG is impressive; however, it does not qualify Mr. Odom as an expert." (Deutsche Bank's Br. in Supp. of Mot. to Exclude Pls.' Expert at 6.) Deutsche Bank further argues that Odom's affidavit amounts to discussion of what the SCRA's drafters meant the law to be and how it should be interpreted–an analysis that usurps the Court's exclusive ability to make conclusions of law.

In response, Plaintiffs point to numerous facts supporting Odom's expert qualifications, including lecturing on the SCRA at armed forces judge advocate schools, consulting with various governmental entities on the SCRA, publishing articles on the SCRA, and receiving awards for his work on SCRA-related matters. Plaintiffs additionally state that they intend to utilize Odom as an expert witness for the proper purpose of interpreting military orders in the context of the SCRA.

A reading of Odom's affidavit and curriculum vitae reveals sufficient experience to qualify Odom as an expert in the SCRA and military orders. Regardless, Odom's affidavit will be excluded

from the record because it consists almost entirely of improper conclusions of law.[1] *See Ross Bros. Const. Co. v. Markwest Hydrocorbon, Inc.*, 196 F. App'x 412, 415 (6th Cir. 2006) ("a district judge has discretion–and the duty–to exclude 'legal opinion' it deems improper").

### B.  Violation of the SCRA

Each party has filed its own motion for summary judgment on Plaintiffs' SCRA claim. Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Material facts are facts which are defined by substantive law and are necessary to apply the law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A dispute is genuine if a reasonable jury could return judgment for the non-moving party.  *Id.*  The Court must draw all inferences in a light most favorable to the non-moving party, but may grand summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

The SCRA was enacted in 2003, as a revision of the Soldiers' and Sailors' Civil Relief Act of 1940.  The general purpose of the SCRA is, in part, "to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service."  50 U.S.C. App. § 502.  "Although the act is to be liberally construed it is not to be used as a sword against persons with legitimate claims."  *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

---

[1]For example, Odom postulates, "The issue of whether or not a private cause of action exists under the SCRA for servicemembers to sue in federal court to redress their grievances in damages against creditors and others who violate their rights under the SCRA should no longer be considered open for discussion.  Such a cause of action clearly exists." (Deutsche Bank's Br. in Supp. of Mot. to Exclude Pls.' Expert Ex. 2a at 26.)

Plaintiffs' SCRA claim encompasses four alleged violations by Defendants. First, Plaintiffs claim that Defendants conducted a foreclosure by advertisement on the Property while Sgt. Hurley was on active duty, in violation of 50 U.S.C. App §§ 516(a) and 533(c). § 516(a) states:

> A member of a reserve component who is ordered to report for military service is entitled to the rights and protections of this title and titles II and III [of the SCRA] during the period *beginning on the date of the member's receipt of the order* and ending on the date on which the member reports for military service (or, if the order is revoked before the member so reports, or the date on which the order is revoked). (Emphasis added.)

§ 533(c) states in pertinent part:

> A sale, foreclosure, or seizure of property for a breach of [an obligation on real property owned by a servicemember that is secured by a mortgage] shall not be valid if made during, or within 90 days after, the period of the servicemember's military service except–
>> (1) upon a court order granted before such sale, foreclosure, or seizure with a return made and approved by the court;...

Next, Plaintiffs claim that Defendants allowed the redemption period to run while Sgt. Hurley was on active duty, in violation of 50 U.S.C. App. § 526(b), which provides, "A period of military service may not be included in computing any period provided by law for the redemption of real property sold or forfeited to enforce an obligation, tax, or assessment." Next, Plaintiffs claim that Defendants evicted the Hurleys from the Property, in violation of 50 U.S.C. App. § 531, which provides in pertinent part:

> (a) Court-Ordered eviction.
>> (1) In general. Except by court order, a landlord (or another person with paramount title) may not–
>>> (A) evict a servicemember, or the dependents of a servicemember, during a period of military service of the servicemember, from premises–
>>>> (i) that are occupied or intended to be occupied primarily as a residence;...

Lastly, Plaintiffs claim that Defendants sold the Property to a BFP, in violation of 50 U.S.C. App. § 521(h), which provides, "If a court vacates, sets aside, or reverses a default judgment against a

servicemember and the vacating, setting aside, or reversing is because of a provision of [the SCRA], that action shall not impair a right or title acquired by a bona fide purchaser for value under the default judgment."

Plaintiffs primarily argue that summary judgment is appropriate because there is no factual dispute regarding their SCRA claims, in light of certain statements Deutsche Bank made in response to Plaintiffs' requests for admission.  The referenced admissions are:

> Saxon Mortgage admits that Mr. Hurley was on active duty during a portion of the redemption period, but denies he was in Iraq during the entire time frame.
>
> Saxon Mortgage admits that Mr. Hurley was on Active Duty during the eviction proceedings but cannot confirm that he was in Iraq.
>
> Saxon Mortgage admits that Mr. Hurley's home was sold while he was on Active Duty status.
>
> Saxon Mortgage admits [that Sgt. Hurley was not allowed the opportunity to redeem the property following his discharge from active duty/return from Iraq.]
>
> Saxon Mortgage admits [that during the eviction proceedings, Defendants were notified that James B. Hurley was on active duty in Iraq.]

(Pls. Mot. for Summ. J. at 4.)

Among other arguments, Orlans contends that the SCRA does not create a private cause of action for the violations Plaintiffs claim.  Orlans reasons that the SCRA sections relied upon by Plaintiffs do not expressly create a private cause of action, and no private cause of action can be inferred from those sections because they provide an adequate means of enforcement.

Deutsche Bank also argues, among other things, that the SCRA does not create a private cause of action for the sections claimed by Plaintiffs.  Instead, according to Deutsche Bank, the SCRA merely preserves private causes of action that exist independent of the SCRA.  Deutsche Bank notes that there is a split in authority as to whether an independent cause of action exists, but

9

that case law is limited to 50 U.S.C. App. § 527, dealing with the imposition of a maximum interest rate, which Plaintiffs have never invoked.

None of the sections invoked by Plaintiffs expressly provide a private cause of action for damages. *See McMurtry v. City of Largo*, 837 F.Supp. 1155, 1157 (M.D. Fla. 1993) ("There is no provision in the [SCRA] which expressly provides for a private cause of action to be bestowed upon a military plaintiff"). However, "Absent an express private right of action, federal courts may in certain circumstances find an implied right of action." *Care Choices HMO v. Engstrom*, 330 F.3d 786, 788 (6th Cir. 2003). In *Court v. Ash*, 422 U.S. 66, 95 S. Ct. 2080 (1975), the Supreme Court announced a four-part test for determining whether a federal statute creates an implied private right of action.

> Under *Cort*, a private right of action exists where:(1) the plaintiff is a member of the class for whose especial benefit the statute was enacted; (2) there is any indication, explicit or implicit, of legislative intent to support such a remedy; (3) an implied private right of action is consistent with the purposes of the legislative scheme; and (4) the cause of action is not "one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action based solely on federal law."

*Howing Co. v. Nationwide Corp.*, 826 F.2d 1470, 1474 (6th Cir. 1987) (quoting *Cort*, 422 U.S. at 78, 95 S. Ct. at 2088). "The Supreme Court has admonished, however, that implying a private right of action 'is a hazardous enterprise at best.'" *Care Choices HMO*, 330 F.3d at 789 (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571, 99 S. Ct. 2479, 2486 (1979)).

The plain language of the SCRA, coupled with instructive case law, persuades the Court that the SCRA does not imply a private right of action for damages for foreclosure, redemption, eviction, or sale to a BFP. *See Batie v. Subway Real Estate Corp.*, No. 3:07-CV-1415-M, 2008 WL 413627 at *7 (N.D. Tex. Feb. 15, 2008) ("there is no provision in SCRA that authorizes a private cause of action to remedy violations of the statute"). The legislative intent of the SCRA is laid out in 50

U.S.C. App. § 502, which states that the purpose of the SCRA is "to provide for the ***temporary suspension*** of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service."  50 U.S.C. App. § 533(d) provides for criminal penalties for those who knowingly violate the foreclosure provisions of the SCRA, and preserves "any remedy for wrongful conversion *otherwise available under law*" to the person claiming relief for foreclosure in contravention to the SCRA.  (Emphasis added.)  50 U.S.C. App. § 531 similarly creates criminal liability for those who knowingly violate the eviction provisions of the SCRA, and preserves remedies *"otherwise available under the law*."  *See Hufstetler v. Davies*, 309 F.Supp. 1372, 1374 (N.D. Ga. 1970) (the eviction provision of the SCRA "authorizes the court to stay eviction or distress proceedings against servicemen in certain instances and provides that one who undertakes such proceedings without first having complied with the Act may be punished... but it does not create a private cause of action for damages from one who has violated the Act").  50 U.S.C. App. § 521(h) actually provides protection to a BFP, not a servicemember.  It does not, as Plaintiffs argue, create a private cause of action simply because property was sold to a BFP.

In sum, the SCRA affords certain rights to servicemembers, but a private right of action is not among them.  Therefore, Plaintiffs' motion for summary judgment will be denied, and Defendants' motions for summary judgment will be granted as to Count I of Plaintiffs' second amended complaint.

### C. Conversion

Plaintiffs maintain a conversion claim arising in conjunction with Defendants' alleged SCRA violations.  Plaintiffs claim that once the property was conveyed, they lost items of personal property such as a floating dock, hunting platform, gazebo, and a double-wide (commonly referred to as a trailer home).  This loss, according to Plaintiffs, gives rise to a conversion claim under M.C.L. § 600.2919a.  Defendants seek summary judgment on Plaintiffs' conversion claim.  Deutsche Bank

argues that Plaintiffs' conversion claim is not viable under former § 600.2919a, the applicable statute.

Prior to June 16, 2005, Michigan's statutory conversion law did not apply to the person who actually converted the property, but instead applied to those who participated in "knowingly buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property. *Thomas v. Mussog*, No. 278060, 2008 WL 1991718 at *2 (Mich. Ct. App. 2008) (quoting *Campbell v. Sullins*, 257 Mich. App. 179, 191-92, 667 N.W.2d 887 (2003)). Michigan's statutory conversion law was amended and made applicable to causes of action arising after June 16, 2005. *Id.* The current version of § 600.2919a allows for recovery from the person who actually converted the property as well as those knowingly buying, receiving, or aiding in the concealment of the converted property.

Michigan courts have defined conversion as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Id.* (internal quotation marks and citations omitted). It is unclear in this case what the precise date of the alleged conversion was. As a result, it cannot be determined whether the current or former § 600.2919a applies to Plaintiffs' claim, and therefore summary judgment must be denied.

### D.  Defendants' Counterclaim for Deficiency

At the time of the foreclosure sale, Sgt. Hurley allegedly owed Deutsche Bank $100,391.71 on his promissory note. (Pls.' Mot. for Summ. J. at 2.) Deutsche Bank purchased the Property at the sale for $70,000, resold it for $76,000, and currently asserts a counterclaim for a $51,642.01 deficiency arising from the sale. Plaintiffs request a judgment on the pleadings on Deutsche Bank's counterclaim under Rule 12(c) of the Federal Rules of Civil Procedure.

Fed. R. Civ. P. 12(c) provides, "After the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." A motion for judgment on the pleadings

under Rule 12(c) is analyzed under the same standard of review applicable to a motion to dismiss under Rule 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001). Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." The Court must construe the counterclaim in the light most favorable to Deutsche Bank, accept its allegations as true, and draw all reasonable inferences in favor of Deutsche Bank. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Plaintiffs cite M.C.L. § 600.3280 as definitive proof that Deutsche Bank's counterclaim must be dismissed. That statute provides:

> When, in the foreclosure of a mortgage by advertisement, any sale of real property has been made after February 11, 1933, or shall be hereafter made by a mortgagee, trustee, or other person authorized to make the same pursuant to the power of sale contained therein, at which the mortgagee, payee or other holder of the obligations thereby secured has become or becomes the purchaser, or takes or has taken title thereto at such sale either directly or indirectly, and thereafter such mortgagee, payee, or other holder of the secured obligation, as aforesaid, shall sue for and undertake to recover a deficiency judgment against he mortgagor, trustor or other maker of any such obligation, or any other person liable thereon, *it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as a matter of defense and set-off to the extent only of the amount of the Plaintiff's claim, that the property sold was fairly worth the amount of debt secured by it at the time and place of sale or that the amount bid was substantially less than its true value, and such showing shall constitute a defense to such action and shall defeat the deficiency judgment against him, either in whole or in part to such extent.* This section shall not affect nor apply to the rights of other purchasers or of innocent third parties, nor shall it be held to affect or defeat the negotiability of any note, bond or other obligations secured by such mortgage, deed of trust or other instrument. Such proceedings, as aforesaid, shall in no way affect the title of the purchaser to the lands acquired by such purchase. This section shall not apply to foreclosure sales made pursuant to an order or decree of court nor to any judgment sought or rendered in any foreclosure suit nor to any chancery sale heretofore made and confirmed.

M.C.L. § 600.3280 (emphasis added). Plaintiffs argue that because Deutsche Bank is the mortgagee, the amount for which it purchased the Property at the foreclosure sale is deemed the amount of the debt secured by the mortgage, and as such no deficiency judgment can be sought under § 600.3280.

13

Deutsche Bank responds that Plaintiffs incorrectly read the statute as an absolute defense to the deficiency claim simply because Deutsche Bank, the mortgagee, placed the high bid at the foreclosure sale.  Rather, defendants argue, Plaintiffs must show that either the amount owed on Sgt. Hurley's debt was $70,000 at the time of the foreclosure sale or that $70,000 was substantially lower than the true value of the Property at the time of the sale.  Defendants argue that Plaintiffs fail to make either showing.

The authority to render a deficiency judgment is statutory and is found in § 600.3280.  *Bank of Three Oaks v. Lakefront Properties*, 178 Mich. App. 551, 555-56, 444 N.W.2d 217, 219 (1989).  The plain language of the statute provides two potential defenses against a deficiency judgment.  Where a mortgagee places a bid at a foreclosure sale that is the entire amount of the mortgagor's indebtedness, no deficiency can exist.  *Id.* at 561, 444 N.W.2d at 222.  Alternatively, a mortgagor can show that the sale amount was less than the fair market value of the property.  *Harmonie Club Enters., LLC v. TCF Nat'l Bank*, No. 264046, 2007 WL 1553597 at *6 (Mich. Ct. App. May 24, 2007).  However, without either showing the defenses are inoperable.  *Id.*  Deficiency judgments are available under § 600.3280, and Plaintiffs offer no facts consistent with either available defense.  As a result, Plaintiffs' motion for judgment on the pleadings must be denied.

### E.  Rule 11 Sanctions Against Plaintiffs' Counsel

Orlans contends that sanctions against Plaintiffs' counsel, Matthew Cooper, are appropriate under Rule 11 of the Federal Rules of Civil Procedure.  Rule 11 states in pertinent part:

(b) Representations to the Court.  By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney... certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law...
> (3) the factual contentions have evidentiary support or, if specifically so identified,

14

will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or lack of information.

"Rule 11 sanctions are appropriate when the district court determines that an attorney's conduct is not 'reasonable under the circumstances.'" *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir 2003) (quoting *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990)). However, "Rule 11 is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Id.* at 595 (internal quotation marks and citations omitted).

Orlans claims that Cooper manufactured statutory sections of the SCRA and accuses Defendants of violating those non-existent sections. Specifically, Orlans notes, Plaintiffs' second amended complaint cites five statutes that do not appear in the current version of the SCRA, including 50 USC (presumably intended as 50 U.S.C. App.) §§ 201, 202, 301, and 303, and 32 USC § 505b.

Plaintiffs respond that the above cited statutes mirror those used by Defendants' SCRA compliance expert. (Pls. Resp. To Orlans' Mot. for Sanctions Ex. 1.) It is highly unlikely that Cooper would attempt to create and expect to prevail on phantom federal statutes. Plaintiffs' second amended complaint is more likely the result of confusion and thus does not necessitate sanctions.

Orlans additionally claims that allegations Cooper made in both Plaintiffs' second amended complaint and in affidavits submitted by Cooper contradict Plaintiffs' prior testimony. Paragraph 23 of the second amended complaint states that, "these defendants... fraudulently induced" Brandi Hurley to leave the Property in exchange for $2,500. Orlans argues that this statement improperly uses the plural "defendants" to describe actions in which Orlans played no part, and it improperly uses the word "fraudulently" after the Eastern District had dismissed Plaintiffs' fraud claim. Paragraph 25 similarly uses the plural "defendants." Paragraph 34 uses the plural "Plaintiffs" to

15

describe actions attributable to Sgt. Hurley but not Brandi.    Paragraph 35 states that "Defendants...refused to compensate Plaintiffs,..." yet Defendants filed an offer of judgment and subsequently entered into settlement discussions.  With regard to the contradicted affidavits, Orlans argues that Sgt. Hurley's affidavit improperly uses the phrase "these defendants" and, inconsistent with Sgt. Hurley's previous testimony, states that he attempted to purchase the property back from its purchaser.   Brandi Hurley's affidavit states that she moved off the Property with the understanding that she would receive $2,500, but testified previously that she rejected such an offer.

Plaintiffs counter that they used a broad brush in referring to Defendants, and inconsistencies in their pleadings are attributable to the appearance of Defendants as a united front and the preliminary nature of the litigation.  The documents that Orlans complains of, while inartfully drawn, do not appear to have been made for an improper purpose, are not misleading to the Court, and are not without reason under the circumstances.  Plaintiffs' actions in this regard are not sanctionable.

As a final note, the materials thus far before the Court evidence a high level of acrimony between counsel for all parties.  Counsel are reminded of their obligations to the Court, each other, and their clients to handle this and any other cases in which they appear in a respectful and professional manner.

### IV.  Conclusion

For the foregoing reasons, Deutsche Bank's *Daubert* Motion to Exclude Any Testimony of John S. Odom, Jr. will be GRANTED.  Plaintiffs' Motion for Summary Judgment Pursuant to Rule 56 and Judgment on the Pleadings Pursuant to Rule 12(c) will be DENIED.  Orlans' Motion for Summary Judgment will be GRANTED as to Count I and DENIED as to Count II.  Deutsche Bank's

Motion for Summary Judgment will be GRANTED as to Count I and DENIED as to Count II.

Orlans' Motion for Rule 11 Sanctions will be DENIED.

     A separate order will issue.


Dated: September 30, 2008                                      /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE