UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES B. HURLEY and BRANDI HURLEY,

    Plaintiffs,

and

JAMES B. HURLEY,

    Counter-Defendant,

v.

DEUTSCHE BANK TRUST COMPANY
AMERICAS f/k/a Banker's Trust Company,
as Trustee and Custodian by: SAXON
MORTGAGE SERVICES, INC., f/k/a/
Meritech Mortgage Services, Inc.,

    Defendants/Counter-Plaintiffs,

and

DAVID C. LOHR and ORLANS
ASSOCIATES, P.C.,

    Defendants.

_____/

Case No. 1:08-CV-361

HON. GORDON J. QUIST

## OPINION

The Court has before it Plaintiff James B. Hurley's Motion for Certification of Order and Memorandum Opinion and Order for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).[1] On September 30, 2008, the Court issued an Opinion and Order addressing various motions, including Plaintiffs' motion for summary judgment and Defendants' motions for summary judgment. With regard to Plaintiffs' claim under the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. App. § 501, *et seq.*, Plaintiffs' only federal claim, the Court concluded that Plaintiffs do not have a private

---

[1] Plaintiff Brandie Hurley has filed a concurrence in the motion. Thus, the Court will treat the motion as filed by both James and Brandi Hurley.

right of action for the alleged violations of the SCRA. The Court thus dismissed that claim, however, it denied Defendants' motions for summary judgment on Plaintiffs' state law conversion claim. Subsequently, Plaintiffs filed a motion for reconsideration, arguing, among other things, that *Batie v. Subway Real Estate Corp.*, No. 3:07-CV-1415-M, 2008 WL 413627 (N.D. Tex. Feb. 15, 2008), which this Court cited in concluding that there is no implied right of action under the SCRA, had reconsidered its own conclusion that the SCRA does not provide a private right of action. The Court denied the motion in a Memorandum Opinion and Order issued on November 14, 2008.

Plaintiffs now request that the Court issue a certification under 28 U.S.C. § 1292(b) to allow them to appeal the ruling that the SCRA does not provide a private right of action. In considering the instant motion, the Court has reexamined its prior ruling in light of several cases holding that a private right of action exists under various sections of the SCRA and now concludes, for the reasons set forth below, that its initial conclusion was wrong. The Court will thus deny the instant motion. However, the Court will set forth its reasons for reconsideration and address the additional summary judgment issues the parties raised in their respective motions.

## I. Facts and Procedural Background

The facts pertinent to the Court's analysis and the procedural history are fully set forth in the Court's September 30, 2008, Opinion (docket no. 140), as well as the Honorable Nancy G. Edmunds' February 12, 2008, Opinion and Order (docket no. 52), and it is unnecessary to repeat them here. Facts necessary to the resolution of a particular issue will be discussed in the context of that issue.

## II. Discussion

### A. Private Right of Action Under the SCRA – Reconsideration

At the outset, it is worth noting the well established rule that "[d]istrict courts possess the authority and discretion to reconsider and modify interlocutory judgments any time before final

judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 952 (6th Cir. 2004). *See also Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders.") (internal citations omitted). Because the September 30, 2008, Order was interlocutory, the Court possesses discretion to reconsider or modify it.

In its previous analysis, the Court applied the four-part test in *Cort v. Ash*, 422 U.S. 66, 95 S Ct. 2080 (1975), to determine whether an implied right of action exists under the SCRA sections Plaintiffs claim were violated and concluded that no such action exists. As part of that analysis, the Court cited *Batie*, *supra*. In a rather cursory analysis, the *Batie* court initially said that the SCRA does not afford a "private cause of action to remedy violations of the statute." *Batie*, 2998 WL 413627, at *7. That court subsequently reconsidered its decision in a brief order, in which it concluded, based upon "the precedent cited," that the SCRA creates a private right of action. *Batie v. Subway Real Estate Corp.*, No. 3:07-CV-1415-M, 2008 WL 5136636 (N.D. Tex. Mar. 12, 2008). While the court did not cite the authority, a review of the plaintiff's motion for reconsideration in that case discloses that the plaintiff relied upon several cases, including *Moll v. Ford Consumer Finance Company*, No. 97 C 5044, 1998 WL 142411 (N.D. Ill. Mar. 23, 1998), and *Marin v. Armstrong*, No. 3:97-CV-2784-D, 1998 WL 1765716 (N.D. Tex. Sept. 21, 1998). *Batie v. Subway Real Estate Corp.*, No. 3:07-CV-1415-M (N.D. Tex. ECF docket no. 30).

In *Moll*, the plaintiff brought a putative class action suit alleging that the defendant violated § 526 of the Sailor and Soldiers Civil Relief Act ("SSCRA"), the predecessor to the SCRA, by failing to reduce interest rates for the plaintiff and other military members to 6% during their period of service in the Persian Gulf War, as required by that section.[2] Citing § 510 of the SSCRA, the

---

[2]The interest reduction section is now codified as § 527 of the SCRA.

3

creditor argued that § 526 did not create a private right of action for a plaintiff to enforce, but rather provided only "defensive relief" that a military member could raise to limit the amount of interest that may be recovered by a creditor in a suit to enforce the underlying obligation. The court rejected the argument, noting that § 510 provided "'for the temporary suspension of legal proceedings and *transactions*' while a military person is on active duty." *Id.* at *2 (quoting § 510). Thus, the court concluded, § 526 requires the suspension of interest obligations at a rate higher than 6% apart from any legal proceeding by the creditor. *Id.* at *2. Turning to the issue of whether the SSCRA provided a private right of action, the court first acknowledged that the SSCRA is to be construed liberally in favor of military personnel and to accomplish substantial justice. *Id.* (citing *Le Maistre v. Leffers*, 333 U.S. 1, 6, 68 S. Ct. 371, 373 (1948)). Given the absence of any provision authorizing an express right of action for violations of §526 or any other section the court applied the four-part *Cort* test.[3] The court found ample basis for concluding that the most important *Cort* consideration was met – that Congress intended to provide relief to military personnel. The court cited the legislative history of the SSCRA, as well as the specific language of § 526, which granted military personnel an "undeniable benefit not enjoyed by other citizens," *id.* at *4, because § 526 and § 518 combined to effectively reduce the interest rate that military personnel paid on their obligations while on active duty. *Id.* The court observed:

> It follows, therefore, that Congress must have intended that a private right of action be available under § 526, "because otherwise the relief would [be] of no value at all." 88 Cong. Rec. 5366 (1942). That is, if no private cause of action is implied, creditors could simply ignore the mandate of § 526 and then claim that they cannot be held responsible. Congress could not have intended such a result.

*Id.* Finally, the court noted that the remaining three *Cort* factors were satisfied because § 526 was only available to a person in military service; limiting the amount of interest that a creditor could charge was consistent with the SSCRA's purpose of providing relief to military personnel; and the

---

[3]This Court cited the *Cort* factors in its earlier Opinion, thus, there is need to repeat them here.

4

SSCRA does not provide relief typically afforded under state law because "it is grounded in Congress' right to raise and maintain armed forces of the United States." *Id.*

The court in *Marin*, *supra*, likewise concluded that the SSCRA provided an implied private right of action. The plaintiff in that case alleged that the defendant violated § 531 of the SSCRA, which precluded a creditor from taking any action on a contract except pursuant to an order by a court of competent jurisdiction, and § 518, which precluded a creditor from taking certain actions based upon a military member's exercise of rights under the SSCRA. The plaintiff claimed that the defendant violated these two sections because he notified the defendant of his inability to fulfill his obligations due to illness resulting from his military service, but instead of initiating a court action, the defendant took other actions to enforce the contract such as harassing him and distributing adverse credit reports. Applying the *Moll* court's reasoning, the court rejected the defendant's assertion that the SSCRA did not create a private right of action. The court observed that Congress must have intended to provide a right of action for a creditor's violation of § 531. The Court noted that without a private cause of action, "creditors could simply ignore the provisions of § 531" by taking extrajudicial actions against the service member. *Marin*, 1998 WL 1765716, at *3. The court also said that the criminal penalties provided in § 531(2) would be of little use because they would "provide no relief to the service member on behalf of whom the statute was enacted." *Id.* Finally, the court reached the same conclusion with regard to § 518 because it confers a right upon service members not enjoyed by the public at large and absent a private cause of action "there would be no way for a service member to ensure that his rights were protected under this section." *Id.* at 4.

*Linscott v. Vector Aerospace*, No. CV-05-682-HU, 2006 WL 240529 (D. Or. Jan. 31, 2006), a case arising under the SCRA, held that a private right of action existed under § 537 of the SCRA.[4]

---

[4] Deutsche Bank is wrong in its assertion that *Linscott* involved § 527 of the SCRA – the interest reduction provision at issue in *Moll*. (Deutsche Bank's Reply in Supp. Mot. Summ. J. at 2.) The *Linscott* court made clear that it was considering whether § 537 provides a private right of action.

Section 537 prohibits the foreclosure or enforcement of liens during any period of military service, except by a court order granted prior to foreclosure or enforcement. The defendants argued that § 537 does not create a private right of action for damages, but only prohibits a creditor from proceeding without a court order. The defendants also pointed to § 537 (c)(2) as suggesting that no damages remedy was intended. That section states: "The remedy and rights provided under this section are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential or punitive damages." Following *Moll* and *Marin*, the *Linscott* court concluded an implied right of action under § 537 was amply supported because "[t]here is no indication that in enacting and renewing the Act, Congress intended to create rights without remedies." *Id.* at *7. Further, the court observed that subsection (c)(2) further supported its conclusion because it shows that "Congress did not intend to explicitly deny servicemembers the remedy of damages for violation of this provision." *Id.*

In this case the Hurleys contend that Defendants violated sections 533(c), 526(b), 531, and 521(h) of the SCRA. Section 533(c) states, in pertinent part:

> A sale, foreclosure, or seizure of property for a breach of [an obligation on real property owned by a servicemember that is secured by a mortgage] shall not be valid if made during, or within 90 days after, the period of the servicemember's military service except–
> > (1) upon a court order granted before such sale, foreclosure, or seizure with a return made and approved by the court;...

Section 526(b) provides: "A period of military service may not be included in computing any period provided by law for the redemption of real property sold or forfeited to enforce an obligation, tax, or assessment." Next, § 531 provides, in pertinent part:

> (a) Court-Ordered eviction.
> > (1) In general. Except by court order, a landlord (or another person with paramount title) may not–
> > > (A) evict a servicemember, or the dependents of a servicemember, during a period of military service of the servicemember, from premises–

6

>>(i) that are occupied or intended to be occupied primarily as a residence;...

Finally, § 521(h) provides, "If a court vacates, sets aside, or reverses a default judgment against a servicemember and the vacating, setting aside, or reversing is because of a provision of [the SCRA], that action shall not impair a right or title acquired by a bona fide purchaser for value under the default judgment."

Following the reasoning of *Moll*, *Marin*, and *Linscott*, which the Court finds persuasive, the Court concludes that Congress intended to confer a private right of action for a violation of § 533(c). As those courts observed, the statute and legislative history strongly support the conclusion that Congress must have intended to provide a means of enforcing the special rights it created in favor of servicemenbers, otherwise, rights granted by the SCRA would essentially be illusory. In addition, the right conferred upon servicemembers under § 533(c) – to have a mortgagee foreclose a mortgage only through a court action – is a right not available to the public at large. Finally, the rights granted under § 533 are very similar to those at issue in *Marin* and *Linscott* under § 531 and § 537, respectively. The Court reaches the same conclusion with regard to § 526, which excludes a period of military service from any period of redemption of real property. The right or benefit granted under this section is also not available to the public, and a servicemember would be unable to obtain relief for a violation of this provision absent an implied right of action.

Regarding § 531, requiring a court order to evict, the Court concludes that a private right of action also exists for violations of this section. While it is true that in Michigan self-help is prohibited and landlords are required to resort to eviction proceedings under the summary proceedings act, *see Mier v. Zimmerman*, No. 273312, 2008 WL 681158, at *3 (Mich. Ct. App. Mar. 13, 2008), § 531(b) grants servicemembers a right to obtain a stay of execution during a period of military service under certain circumstances. This right is unavailable to ordinary citizens.

7

Finally, the Court concludes that no private right of action exists under § 521(h). That provision provides no specific protection to a servicemember. Rather, it protects a bona fide purchaser for value in the event that a default judgment is vacated or set aside because of a provision of the SCRA. Thus, a private cause of action would serve no purpose.

### B.   Sgt. Hurley's Entitlement to SCRA Protections

Section 516(a) of the SCRA provides:

> A member of a reserve component who is ordered to report for military service is entitled to the rights and protections of this title and titles II and III [of the SCRA] during the period *beginning on the date of the member's receipt of the order* and ending on the date on which the member reports for military service (or, if the order is revoked before the member so reports, or the date on which the order is revoked).

50 U.S.C. App. § 516(a) (italics added). As is evident from the language of the statute, the point at which a reservist, such as Sgt. Hurley, becomes entitled to the protections of titles II and III of the SCRA is determined on the date he or she receives the order to report for military service. Deutsche Bank makes much of the fact that Sgt. Hurley never provided it copies of his active duty orders, even though Deutsche Bank sent Sgt. Hurley a Soldiers & Sailors Act Requirements letter informing him he needed to furnish such copies. However, the operative event for the protections is the *servicemember's*, not the mortgagee's, receipt of the orders.[5]

The issue, then, is the date Sgt. Hurley received his active duty orders. Although Sgt. Hurley's individual orders are dated October 12, 2004, there is no evidence showing when Sgt. Hurley received them. On the other hand, Sgt. Hurley's National Guard Unit was "ordered to active duty" in support of Operation Iraqi Freedom for an initial period of 18 months beginning October 1, 2004, pursuant to U.S. Army orders dated September 9, 2004. This order ordered the unit "and

---

[5]While § 516(a) conditions the extension of protections upon the member's receipt of active duty orders, § 527, providing for the interest rate reduction to 6%, does require the member to provide a copy of his or her orders to the creditor in order to receive the interest rate reduction. *See* 50 U.S.C. App. § 527(b)(1). However, that section is not at issue here.

8

its member(s)" to active service. It appears undisputed that Sgt. Hurley received his unit orders on or around September 11, 2004. In their arguments Defendants focus upon Sgt. Hurley's receipt of his individual orders. However, contrary to Deutsche Bank's suggestion, § 516(a) does not draw a distinction between unit and individual orders, but simply refers to "the member's receipt of the order." Because the Supreme Court has said that the SSCRA "is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation," *Boone v. Lightner*, 319 U.S. 561, 575, 63 S. Ct. 1223, 1231 (1943), the Court concludes that a servicemember's receipt of unit orders ordering the unit and its members to active service invokes the extended protections under titles II and III of the SCRA. Thus, Sgt. Hurley was entitled to SCRA protections as of September 11, 2004.

Even though Sgt. Hurley was not required to provide Defendants copies of his orders to invoke his SCRA protections, there is plenty of evidence that Deutsche Bank was aware that Sgt. Hurley was ordered to active duty. For example, Deutsche Bank's call log shows that Sgt. Hurley's mother had several conversations with Deutsche Bank's representative about Sgt. Hurley's upcoming period of service. In addition, Deutsche Bank produced from its own files a copy of a fax that Captain James Jennette, Sgt. Hurley's commander, sent to Deutsche Bank on October 12, 2004, that included a copy of the unit order and other information pertaining to the deployment. Finally, Deutsche Bank admits that on October 14, 2004 – one day after the foreclosure sale – it changed Sgt. Hurley's account status to VIP, indicating that he was entitled to SCRA protection.

    **C.**     **SCRA Violations**

        **1.**     **Non-Judicial Foreclosure in Violation of § 533(c)**

On October 14, 2004, Deutsche Bank, through Orlans, held a sheriff's sale of the Property. Section 533(c) provides that a sale, foreclosure, or seizure of property made during the servicemember's period of service or within 90 days thereafter is invalid unless done pursuant to a court order. It is undisputed that Defendants foreclosed without a court order.

9

Deutsche Bank contends that the October 14 foreclosure did not violate § 533(c) because Sgt. Hurley's period of active duty began on October 25, 2004; therefore, the foreclosure occurred before the period of active duty. This argument ignores the clear language of § 516(a), quoted above, which extends SCRA protections to members of reserve components from the time they receive their active duty orders through the date on which the servicemember reports for military service. Because Sgt. Hurley received his orders in September 2004, he was entitled to SCRA protections as of that time. Therefore, the non-judicial foreclosure violated the SCRA.

Deutsche Bank contends that it is entitled to summary judgment on this aspect of Plaintiffs' claim and, conversely, Plaintiffs are not entitled to summary judgment, because neither Sgt. Hurley nor his mother, who had a power of attorney, took any action during this period of time to stop the sale. In addition, Deutsche Bank points out that it has presented evidence showing that Sgt. Hurley had a positive bank account balance during this time. Deutsche Bank asserts that if it had filed a judicial foreclosure action and Sgt. Hurley had moved for a stay under § 533(b), he could not have shown that his military service materially affected his ability to make his mortgage payments, as is required for a stay under that section, and it would have proceeded with the foreclosure in any event.

Both arguments fail. First, Deutsche Bank fails to cite any provision of the SCRA that obligated Sgt. Hurley or his mother to take action to stop a non-judicial foreclosure that was invalid and thus violated the SCRA. Sgt. Hurley's protection from a non-judicial foreclosure extended from the date he received his orders until ninety days after the termination of his period of military service. Second, while Deutsche Bank may be correct in its assertion that Sgt. Hurley's military service did not materially affect his ability to meet his mortgage obligation, that point is irrelevant. The violation is foreclosing without a court order. Because Deutsche Bank never initiated a judicial foreclosure, Sgt. Hurley never had the opportunity to move for a stay, regardless of whether it would have been granted. While evidence of Sgt. Hurley's ability to meet his obligations may have some

10

bearing on the issue of damages, it is irrelevant to the determination of whether the non-judicial foreclosure violated § 533(c).

Defendants Orlans and Lohr contend that Plaintiffs are not entitled to summary judgment against them on this violation because there is no evidence that they did anything wrong. However, as Plaintiffs correctly note, it is undisputed that in order to conduct the foreclosure sale, Defendant Lohr, acting on behalf of Orlans, signed a non-military affidavit stating "that upon investigation he is informed and believes that none of the persons named in the notice attached to the sheriff's deed of mortgage foreclosure, nor any person upon whom they or any of them were dependent, were in the military service of the United States at the time of sale or for six months prior thereto." Defendants Orlans and Lohr argue that there is a question of fact as to whether Sgt. Hurley or anyone in his family notified these Defendants that Sgt. Hurley was on active military duty. However, Lohr represented in the affidavit that he "investigat[ed]" Sgt. Hurley's status, but there is no evidence that he actually checked with Deutsche Bank or with the Hurleys before signing the affidavit, which was necessary to facilitate the foreclosure.

### 2.     Failure to Toll the Redemption Period in Violation of § 526(b)

Pursuant to § 526(b), the time to redeem real property is tolled during a period of military service. Had the foreclosure been valid, the redemption period would have been tolled until December 2005, when Sgt. Hurley returned home from Iraq. Because the foreclosure was not valid, however, the redemption period never commenced. Thus, contrary to Deutsche Bank's assertion, Sgt. Hurley did not have until April 14, 2005, to cure the default and redeem the property. In addition, Deutsche Bank had notice of Sgt. Hurley's status, as evidenced by its designation of his account status to VIP as of October 15, 2004. Given the information that Deutsche Bank possessed, there was no need for Sgt. Hurley to provide a copy of his orders to substantiate his military service. Moreover, Lohr and Orlans should have learned of Sgt. Hurley's status through their client, Deutsche Bank. Therefore, Plaintiffs are entitled to summary judgment on this violation as well.

### 3. Eviction in Violation of § 531

Plaintiffs claim that Defendants violated § 531 by evicting them from the Property in June of 2005 while Sgt. Hurley was on active duty in Iraq. As set forth above, that section states, in relevant part: "Except by court order, a landlord (or another person with paramount title) may not – (A) evict a servicemember, or the dependents of a servicemember, during a period of military service of the servicemember." By its own terms, this section does not prohibit an eviction during a servicemember's period of service, but only an eviction without a court order. In this case, it is undisputed that Defendants initiated a judicial proceeding to evict Plaintiffs and obtained a court order – a default judgment awarding Deutsche Bank possession. Deutsche Bank also obtained a writ of restitution. Moreover, it is undisputed that the state district court judge who presided over the eviction proceeding was aware that Sgt. Hurley was in Iraq. (Clarke Aff. ¶ 3.)

The basis for Plaintiffs' claim that Defendants violated § 531 is not entirely clear. To the extent Plaintiffs assert that the judgment of possession is void because Deutsche Bank had no right to the property in light of the invalid foreclosure, the argument fails because "'[j]udgments entered in violation of the [SCRA] are only voidable and do not violate due process.'" *Longmire v. Longmire*, No. 199CV206-P-A, 2000 WL 796435, at *2 (N.D. Miss. June 1, 2000) (quoting *Sarfaty v. Sarfaty*, 534 F. Supp. 701 (E.D. Pa. 1982)). Therefore, Defendants are entitled to summary judgment on this portion of Plaintiffs' claim.

### 4. Conveyance to Bona Fide Purchaser – § 521(h)

Plaintiffs' final claim is that Defendants violated § 521(h). As noted above, that section protects a bona fide purchaser: "If a court vacates, sets aside, or reverses a default judgment against a servicemember and the vacating, setting aside, or reversing is because of a provision of [the SCRA], that action shall not impair a right or title acquired by a bona fide purchaser for value under the default judgment." 50 UCS App. § 521(h). This section provides no protection to a

12

servicemember, and Plaintiffs thus have no claim for a violation. Therefore, Defendants are also entitled to summary judgment on this portion of Plaintiffs' claim.

### 5. Plaintiffs' Failure to Utilize § 521(g)

Defendants contend that Plaintiffs' claims are barred by their failure to pursue their remedies under § 521(g). That provision states:

> **(g) Vacation or setting aside of default judgments.** (1) Authority for court to vacate or set aside judgment. If a default judgment is entered in an action covered by this section against a servicemember during the servicemember's period of military service (or within 60 days after termination of or release from such military service), the court entering the judgment shall, upon application by or on behalf of the servicemember, reopen the judgment for the purpose of allowing the servicemember to defend the action if it appears that –
> (A) the servicemember was materially affected by reason of that military service in making a defense to the action; and
> (B) the servicemember has a meritorious or legal defense to the action or some part of it.
> (2) Time for filing application. An application under this subsection must be filed not later than 90 days after the date of the termination or release from military service.

50 U.S.C. App. § 521(g).

Defendants contend that § 521(g) is Plaintiffs' exclusive remedy under the SCRA and that their failure to have the default judgment set aside bars their claims for damages because all of their claims for damages arise out of the state court eviction judgment. The Court agrees with Defendants insofar as Plaintiffs seek damages arising out of the eviction, but it rejects Defendants' contention that the eviction judgment bars Plaintiffs' claims arising out of Defendants' improper foreclosure, permitting the redemption period to expire, and subsequent sale to a bona fide purchaser. While the eviction ultimately enabled Deutsche Bank to sell the Property to the bona fide purchase, the harm caused by the sale was legally distinct from the eviction. Likewise, the improper foreclosure was a legally separate harm. Finally, as Plaintiffs note, by the time Sgt. Hurley returned home from Iraq, Deutsche Bank had sold the Property to the bona fide purchaser. Moving to set aside the default judgment would have thus served no purpose.

In a related argument, Defendants Lohr and Orlans contend that the *Rooker-Feldman* doctrine also precludes this Court from even considering that the state court judgment may be invalid. That doctrine prohibits federal courts below the United States Supreme Court from exercising "appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings." *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.2d 783, 793 (6th Cir. 2004) (citations omitted). It "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005). Finally, the doctrine is applicable only where the injury alleged arises from the state court judgment itself. *See Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006). "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction. If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). For example, in *Coles*, a prior state court judgment determined that Erie County Metropolitan Metroparks possessed a valid leasehold interest in certain property along an old canal. After Metroparks began to develop the property as a trail, the plaintiffs filed an action in federal court alleging that the defendants were encroaching upon property beyond that found by the state court to be included within the Metroparks' leasehold interest. The Sixth Circuit rejected the defendants' argument that the plaintiffs' claims were barred by *Rooker-Feldman*, because the plaintiffs were not seeking to throw out the state court judgment but, rather, to enforce it. *See Coles*, 448 F.3d at 859. The court noted that "*Rooker-Feldman* applies only when a plaintiff asserts injury from the state court judgment," *id.* at 859, and the plaintiffs were alleging that the defendants were the one injuring them. *See id.* In its analysis, the court discussed

14

another case, *Todd v. Weltman, Weinbert & Reis Co.*, 434 F.3d 432 (6th Cir. 2006), where *Rooker-Feldman* did not preclude jurisdiction. In that case, the court rejected the defendant's argument that *Rooker-Feldman* barred the plaintiff's federal claim that the defendant had lied in an affidavit submitted in support of a prior state court garnishment proceeding. The court concluded that the doctrine did not apply because the defendant was alleging injuries from the defendant's deception and not from the state court judgment. *See id.* at 437.

Similarly, in this case, Plaintiffs are asserting injuries arising out of sources other than the state court judgment. Accordingly, the *Rooker-Feldman* doctrine does not bar Plaintiffs' claims unrelated to the eviction.

**D.     Laches**

Deutsche Bank also contends that Plaintiffs' claims are barred by the equitable doctrine of laches. The Sixth Circuit has said that "[l]aches is a negligent and unintentional failure to protect one's rights." *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). The Sixth Circuit recognizes "a strong presumption that a plaintiff's delay is reasonable so long as the analogous statute of limitations has not elapsed." *Id.* A defense of laches is viable only where the party asserting it can "(1) show prejudice or hardship resulting from the plaintiff's delay in bringing suit, and (2) demonstrate that the delay induced the defendant to adversely change his position." *Hinds v. Titan Wheel Int'l, Inc.*, 45 F. App'x 490, 495 (6th Cir. 2002).

Deutsche Bank has failed to show that it is entitled to the defense of laches. First, it has not argued that Plaintiffs failed to bring their claim within the applicable limitations period. The presumption that any delay was reasonable therefore applies. Moreover, Deutsche Bank's argument focuses not upon Plaintiffs' delay in bringing suit, but rather upon Sgt. Hurley's failure to take any action to stop the foreclosure proceedings or to redeem the property. But as the Court has already discussed, the non-judicial foreclosure proceeding was improper, and Sgt. Hurley was thus not

15

required to take any action to stop the foreclosure or cure his default. Finally, Deutsche Bank cannot show prejudice. Given that Deutsche Bank treated the foreclosure as valid, considered the redemption period as having expired, and sold the Property to a bona fide purchaser, all before Sgt. Hurley's period of military service ended, there is no basis for concluding that his inaction caused Deutsche bank any prejudice.[6]

### E. Punitive Damages

The final issue is whether punitive damages are allowed under the SCRA. Predictably, Defendants cite Michigan law, which does not allow punitive damages. Plaintiffs, on the other hand, contend that Texas law should control, apparently because that is where Deutsche Bank's headquarters are located. The Court need not chose between the two, because both parties are wrong. The SCRA is a federal law, and therefore, federal law should control the determination of the issue.

Where a private right of action is judicially implied, the court has "a measure of latitude to shape a sensible remedial scheme that best comports with the statute." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 284, 118 S. Ct. 1989, 1996 (1998). Determining a proper remedy "inherently entails a degree of speculation, since it addresses an issue on which Congress has not specifically spoken." *Id.* The statute at issue should guide the issue, to ensure that the remedy is not at odds with the statutory structure and purpose. *Id.*

The Court thus begins with the statute. According to § 502, the purposes of the SCRA are:

(1) to provide for, strengthen, and expedite the national defense through protection extended by [the SCRA] to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and

(2) to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service.

---

[6]Conceivably, such failures by Sgt. Hurley and/or his mother, who had a power of attorney for handling his affairs, could be relevant to the issue of mitigation of damages.

50 U.S.C. App. § 502. While the SCRA is to be construed liberally in favor of servicemembers, "it is not to be used as a sword against persons with legitimate claims." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

Apart from the stated purpose of the act, Congress included provisions concerning preservation of other remedies in various sections of the SCRA providing specific rights to servicemembers. For example, § 533(d)(2) provides:

> (2) Preservation of other remedies. The remedies and rights provided under this section are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

50 U.S.C. App. § 533(d)(2). As noted above, the court in *Linscott* concluded that a similar provision under § 537(c) indicated that Congress did not intend to deny the remedy of damages to servicemembers. *Linscott*, 2006 WL 240529, at *7.

While the question is not free from doubt, this Court concludes that punitive damages may be recovered for SCRA violations. In *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 112 S. Ct. 1028 (1992), the Supreme Court said that in implying a right of action, "we presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." *Id.* at 66, 112 S. Ct. at 1033. Because there is no indication in the statute that Congress intended to exclude punitive damages as a remedy, the Court finds no basis to conclude that such damages are unavailable.

### III. Conclusion

Because the Court concludes that Plaintiffs have a private right of action under certain sections of the SCRA, the Court will deny Plaintiffs' motion for certification to take an interlocutory appeal. However, the Court will vacate that portion of its September 30, 2008, Opinion concluding that Plaintiffs have no implied right of action under the SCRA and the portions of its September 30, 2008, Order granting Defendants' motions for summary judgment on Count I of Plaintiffs' Second

Amended Complaint and denying Plaintiffs' motion for summary judgment on Count I. The Court will also vacate its November 14, 2008, Memorandum Opinion and Order denying reconsideration.

Finally, the Court will enter an Order consistent with this Opinion granting Plaintiffs' motion for summary judgment with regard to violations of §§ 533(c) and 526(b) of the SCRA alleged in Count I of Plaintiffs' Second Amended Complaint but denying summary judgment on the violations of §§ 531 and 521(h), and granting Defendants summary judgment on the violations of §§ 531 and 521(h) but denying summary judgment on the violations of §§ 533(c) and 526(b), as well as the issue of punitive damages.


Dated: March 13, 2009                                        /s/ Gordon J. Quist
                                                                                GORDON J. QUIST
                                        UNITED STATES DISTRICT JUDGE